IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

FREDDIE W. FOWLER                                                                          PLAINTIFF

V.                                                         CIVIL ACTION NO. 1:16-CV-00160-NBB-DAS

OMNOVA SOLUTIONS;
OMNOVA Solutions Consolidated
Pension Plan                                                                                  DEFENDANTS

MEMORANDUM OPINION

Presently before the court are the parties' cross-motions for summary judgment. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Freddie Fowler, began working for Defendant Omnova Solutions ("Omnova") in 1976. More than three decades later, on May 15, 2010, Fowler and other employees initiated a lawful economic strike against Omnova. Fowler has not returned to work since that date.

In August of 2015, Fowler filed a claim for "regular early retirement" benefits with Defendant Omnova Solutions Consolidated Pension Plan ("the Plan"). Pursuant to the Plan, "an [e]mployee who has attained the age 55 . . . and has completed 10 full years of [c]ontinuous service" is eligible for regular early retirement benefits. Thus, this particular benefit requires both an "age" and "years of service" minimum.

The defendants denied Fowler's claim after determining that he had not met the "age" requirement. Defendants based this determination on their insistence that Fowler had ceased being an employee on August 15, 2010, and at that time he was only fifty-four (54) years of age.

Fowler appealed the adverse decision and his appeal was denied on February 2, 2016. He subsequently requested that the matter be submitted to arbitration in accordance with the Plan's grievance procedure but the defendants refused.

Fowler filed the instant suit on September 6, 2016, asserting a demand for arbitration or, in the alternative, a claim for benefits. The parties have now filed cross-motions for summary judgment as to the demand for arbitration only.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts have placed the burden upon the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing there is a genuine issue for trial." *Id.* at 324. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

Fowler now asks this court to compel arbitration under 9 U.S.C. § 4 of the Federal Arbitration Act (the "FAA") based upon an arbitration clause contained with the Plan. The arbitration clause provides, in pertinent part, as follows:

> [i]f any difference shall arise . . . as to . . . (b) the age of such [e]mployee or [p]ensioner, . . . and if agreement cannot be reached . . . such question may be taken up as a grievance under the grievance procedure provided for in the applicable labor agreement at the level at which a grievance is presented to the Company's grievance committee. If any such grievance shall be taken before an impartial umpire . . . the decision of the impartial umpire on any such question shall be binding . . . . Termination of the labor agreement shall not invalidate the use of its grievance procedure for the purposes of this paragraph.

The FAA has been interpreted by some courts to "manifest a 'liberal federal policy favoring arbitration agreements.'" *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstatel Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). Further, there is a presumption of arbitrability such that "an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1975).

When determining whether to compel arbitration under the FAA, the court must engage in a two-step inquiry. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). First, the court must determine whether the parties agreed to arbitrate the dispute. *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992). To make this determination, the court must consider "whether there is a valid agreement to arbitrate between the parties; and . . . whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). If so, the court must then consider whether any federal statute or policy renders the claim non-arbitrable. *Id.* In conducting this inquiry, however, courts must not

3

consider the merits of the underlying action. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

Defendants advance three arguments in opposition to Fowler's demand for arbitration. Defendants first argue that the issue in dispute does not fall within the scope of the applicable arbitration provision. According to Defendants, the dispute at issue is not Fowler's age. Instead, Defendants opine, "the dispute is whether Plaintiff remained an '[e]mployee' as defined by the Plan," and as the definition of "employee" does not fall within the scope of the arbitration provision, Fowler's demand for arbitration must fail.

In response, Fowler contends that the dispositive issue to be decided is whether he met the age requirement to be eligible for benefits under the Plan. He further asserts that Defendants are merely "recharacterizing the claims so that they appear facially outside the scope of the arbitration agreement."

The court agrees with Fowler. By its very language it is clear that "*any* difference" as to the employee's "age" falls within the scope of the provision. In the instant case, Defendants denied Fowler's application for retirement benefits because it determined he had not met the *age* requirement. Thus, there is a "difference as to the age" of an employee which brings the dispute within the scope of the provision. The court is mindful that the definition of "employee" is certainly relevant in resolving the instant dispute, but the dispute remains one concerning Fowler's age.

Moreover, arbitration clauses containing the language "any dispute" or "any difference", like the one here, are of the broad type and, therefore, are to be construed in favor of arbitration. *AT&T Technologies*, 475 U.S. at 650; *see also Complaint of Hornebeck (1984) Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752 (5th Cir. 1993); *Mar-Len of La.*, 773 F.2d 633. Further,

"[w]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985). For these reasons, the court finds that the dispute at issue does fall within the scope of the instant arbitration provision.

Next, Defendants contend that, even if the dispute does fall within the scope of the provision, arbitration is merely permissive rather than mandatory. Defendants point to the provision's use of the word "may" instead of "shall," and assert that "the plain language of the Plan requires the consent of all parties" to arbitrate.

Courts have routinely rejected arguments similar to the one espoused by Defendants and, instead, have construed "may" to give an aggrieved party the option to either require arbitration or abandon its claim altogether. *See United States v. Bankers Ins. Co.*, 245 F.3d 315 (4th Cir. 2001); *American Italian Pasta Co., v. Austin Co.*, 914 F.2d 1103 (8th Cir. 1990); *Ceres Marine Terminals, Inc. v. International Longshoremen's Ass'n, Local 1969, AFL-CIO et al.*, 683 F.2d 242 (7th Cir. 1982); *United Steelworkers of America, AFL-CIO v. Fort Pitt Stell Casting, Division of Conval-Penn, Inc.*, 598 F.2d 1273 (3rd Cir. 1979); *Local 771, IATSE, AFL-CIO v. RKO General, Inc. WOR Division*, 546 F.2d 1107 (2nd Cir. 1977); *Deaton Truck Line, Inc. v. Local Union 612*, 314 F.2d 418 (5th Cir. 1962); *Held v. National R.R. Passenger Corp.*, 101 F.R.D. 420 (D.D.C. 1984).

In so holding, courts have reasoned that "there would be no reason for the arbitration language . . . if the parties intended it to be permissive, for the parties could voluntarily have agreed to submit a dispute to arbitration in the absence of such a provision." *American Italian Pasta Co.,* 914 F.2d at 1104. Further, to find otherwise "would in effect treat their agreement to arbitrate as a useless gesture," as "there would be little or no reason to provide . . . that [the

5

decision of the impartial umpire] shall be binding upon the parties." *Local 771 IATSE AFL-CIO*, 546 F.2d at 1116. Indeed, such provisions are permissive only "until such time as the [employee] or the [employer] invoke[s] arbitration," and, at that point, arbitration then becomes mandatory. *Held*, 101 F.R.D. at 423 (citing *Nemitz v. Norfolk & Western Railway*, 436 F.2d 841 (6th Cir. 1971)).

"At best, [Defendants have] established only" that the Plan "was poorly drafted and left the nature of [Fowler's] remedies for [his] grievances slightly ambiguous." *Ceres*, 683 F.2d at 248. This "however is insufficient to avoid application of the rule that courts are to construe collective bargaining agreements in favor of arbitration." *Id.* For these reasons, the courts finds that, once Fowler made a demand under the instant provision, arbitration became mandatory.

Lastly, Defendants assert that no agreement to arbitrate has been triggered because conditions precedent to arbitration were undisputedly not met. Pursuant to the agreement, a dispute must first be considered by the company grievance committee before it can proceed to arbitration. Defendants accurately point out that there no longer exists a company grievance committee to which Fowler can submit his claim because the labor agreement has been terminated and the union has been decertified.

Defendants, however, conveniently overlook the last sentence of the arbitration provision which provides "[t]ermination of the labor agreement *shall not* invalidate the use of its grievance procedure for the purposes of this paragraph." (Emphasis added). Thus, according to the Plan's unequivocal language, the parties clearly intended for the grievance procedure, i.e. arbitration, to continue to be available despite the termination or decertification of the labor agreement and union. The court, therefore, finds that Fowler's inability to submit his claim to the company grievance committee does not preclude his demand for arbitration.

<u>Conclusion</u>

Based on the foregoing discussion, the court finds that summary judgment should be granted in favor of Plaintiff Fowler. Accordingly, Fowler's claim for retirement benefits should be submitted to arbitration pursuant to the terms of the Plan. Further, because the valid arbitration agreement at issue provides for binding and non-appealable arbitration, the court finds that this case should be dismissed with prejudice. A separate order in accord with this opinion shall issue this day.

This, the 21st day of August, 2017.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**